Jackson, J.,
delivered the opinion of the Court. The question arising out of this verdict is, whether the brothers and sisters of the half-blood can claim as heirs to Mary Marsh, or whether the whole of her estate descended to her mother.
This could not be made a question at the common law ; but with us, from the first settlement of the country, the rules of the descent and distribution of real and personal estate have generally been alike, and they depend wholly on our * own statutes. The [ *491 ] provincial act of 4 Will. & Mar., c. 2, for the settlement and distribution of the estates of intestates, adopts substantially the provisions of the English statute of distributions, 22 and 23 Car. 2, c. 10, and applies them equally to real and personal estate. By this act it is, among other things, enacted, that, if any of the children (that is, of the deceased, whose estate is to be settled and distributed) die unmarried, and before arriving at full age, “ the portion of such child deceased shall be equally divided among the survivors.” This provision, by force of the word portion, was confined to such estate as came to the deceased child from the parent; and its effect was, to place the estate in the same situation as if that child had died before the parent. It was not unlike the case of a lapsed legacy, or a legacy upon condition ; as if the parent had devised all his estate to such of his children who should arrive at full age, or be married. But, if *428 such ch'ld should have acquired any estate, real or personal, from any other source, and should have died intestate, whether under age or of full age, such estate would descend and be distributed according to the general provisions of the act, namely, to the next of kin to the child. The next of kin, according to the construction given to the statute of 22 and 23 Car. 2, which has been always adopted here, would be the father of such child, if any, who would of course take the whole ; if no father, the whole would go to the mother; and, if no father nor mother, then to the brothers and sisters, and so on. The right of representation among collaterals was not admitted after brothers’ and sisters’ children.
If this law had continued in force, the mother, in this case, would have taken the whole estate of which the said Mary Marsh died seized. It was not a portion of her father’s estate to be newly distributed among his other children. It was the whole of his estate ; and the distribution or settlement first made was, so far as concerned him, final. He was no longer the stock or propositus, whose estate was to be settled. It had now become the estate of ['*492] his * daughter ; and, as there were no “ survivors,” children of his, to take it from her, it would have been distributed as her other estate, without reference to the clause first before mentioned.
But, by another provincial act, 9 Ann. c. 2, it was enacted, that, if, after the death of a father, any of his children should die intestate, without wife or children, in the lifetime of the mother, every brother and sister, and their representatives, should have an equal share with her in the estate of the intestate. It was never understood that this last act was intended to repeal the former, as to the portion of a child dying under age and unmarried ; but the intention was, that whenever the mother should inherit by force of the first act, then the brothers and sisters should inherit equally with her ; and this applied to “ the estate of the intestate,” that is, of the deceased child, and not to the estate of the father ; which, in the other case, was still considered as if in a course of distribution, and a portion of /which was to be newly assigned among his children.
These two acts remained in force until revised, after the adoption of our State Constitution, in the statute of 1783, c. 36. In the first section of this latter statute, after prescribing the general course of descent as before, it is enacted, that when any of the children of an intestate shall die under age and unmarried, “ such deceased child’s share shall descend equally among the surviving brothers and sisters, and such as shall legally represent them ; but, if such deceased child shall die after having arrived to the age of twenty-one years, unmar- ' ried, and intestate, in the lifetime of the mother, every brother and sister shall inherit equally with the mother.” The language of this *429 statute seems not so clear as that of the two former ; but as it was understood to be a revision of them, and to have a tacit reference to them, and to the legal construction which they had received ; and as this opinion was strongly fortified by the use of the word share, re ferring to a portion of the father’s estate, and the word inherit, in the other clause, referring to * all the other [*4¡93] estate of the child ; the provision was generally considered the same as that of the two provincial acts ; and, of course, it was understood that all the estate of a deceased child, which did not come within the provisions of the first clause, should be distributed according to the second clause, namely, to the mother and the brothers and sisters equally, although the child should have died within the age of twenty-one years.
The obscurity of the latter statute, in this and other particulars, was supposed to have been one of the principal motives for the new statute on this subject, passed on the 12th of March, 1806. The chief object of the legislature in this statute, which is understood to have been prepared by the late Chief Justice Parsons, seems to have been, not to establish new rules of descent and distribution, but to adopt and confirm, in clear and explicit language, the legal construction which had been given to the preceding statutes, and which had been considered the law of the country for more than a century.
In the first section of this statute it is enacted, that the real estate of the intestate, when he shall leave no issue, shall descend to his father ; if no issue nor father, it shall descend in equal shares to his mother, if any, and his brothers and sisters, and to the children of any deceased brother or sister by right of representation ; if no issue, father, brother, nor sister, it shall descend to his mother, if any ; but if no mother, then to his next of kin in equal degree. It is in the same section provided, “ that, when any child shall die underage, not having been married, his share of the inheritance, that came from his father or mother, shall descend, in equal shares, to his father’s or mother’s other children then living respectively, and to the issue of such other children as are then dead, if any, by right of representation.” This proviso not only defines, with precision, what estate of the child shall be thus distributed to the exclusion of the mother, namely, the share that came from his father or mother, but also who shall take it, namely, his father’s or mother’s other children, that is, the other * children of the father or mother [*494] from whom the share was derived.
This statute was in force when the said Mary Marsh died ; and it is obvious that the case does not come within the last-mentioned proviso. Her estate is, therefore, to be settled and distributed according to the other clause of the statute ; that is, it descends in equa. *430 shares to her mother, and her brothers and sisters, and the legal repre« sentatives of the latter.
The only remaining question is, whether the brothers and sisters who claim in this case, being all of the half blood, are entitled to share with the mother.
The provincial act of Will. & Mar., as before observed, was principally copied from the English statute of distributions ; and, so far as they were alike, the judicial constructions on the English statute would naturally be adopted here. On this question of the right of the brothers and sisters of the half blood, there had, at first, been some doubt in the English courts, arising partly from the common law principle, which excluded them altogether from the inheritance of real estate, and partly from the provision of the civil law, which admitted them only when there Were no brothers or sisters of the whole blood.(1) There had been, it is said, some contradictory decisions on this subject, (although the claim of the half blood had most generally prevailed,(2) before the year 1690, in which year it was finally settled in the case of Crooke vs. Watts, that brothers and sisters of the half blood were entitled, by the statute of distributions, to share equally with those of the whole blood.(3) The decree in that case was affirmed, in the same year, in the House of Lords, and the point was never afterwards doubted in that country. As our provincial act was made after this construction of the statute of Charles was fully settled, and, as we adopted the language of that statute in this particular, it would be presumed that we adopted the same construction of the language ; and such, accordingly, has been, for a long time, the understanding and practice in our . courts.†
[*495] * The consequence is, that the mother, Lydia Lovering, the three brothers and sisters, including the demand-ant, and the issue of the deceased brother, take each one fifth of the estate of Mary Marsh; and judgment must accordingly be entered for the demandant for one fifth part of the premises.

 Nov. 118, c. 3.

 Smith vs. Tracy, 1 Mod. 209. — 1 Vern. 403.

 2 Vern. 124.— Show. P. C. 108.

 f“ The kindred of the half blood shall inherit equally with those of the whole blood in the same degree.” — Mass. Rev. Stat. c. 61, § 5.—Ed.]