## CROWELL, Ap't. *v.* CLOUGH, Ap'ee.

Where a man dies, leaving several children, and one of them dies under age and unmarried, the surviving children of the deceased father will take the deceased child's share in their father's estate, to the exclusion of his brothers and sisters of the half-blood by the same mother, but by a different father.

APPEAL from a decree of the judge of probate for Merrimack county, passed on the fourth Tuesday of June, 1851, ordering distribution of the estate of Sarah J. Knowlton, who died in October, 1850, intestate, under age and unmarried. The estate ordered to be distributed was the destributive share of the deceased in the estate of her father, who died intestate, previous to the year 1835, leaving a widow and four children. His widow married the appellant, and had by him two children, Malvina L. Crowell, and Martin T. Crowell, and this appeal is taken in their behalf, by their father and guardian. The judge of probate decreed that Phineas Clough, the administrator and appellee, should distribute the estate to Nathaniel W. Knowlton, Elizabeth G. Starr, and Mary C. Knowlton, who are the surviving children of Nathaniel Knowlton, and brother and sisters by the same mother, of the intestate, Sarah J. Knowlton, excluding the children of her mother, by the appellant, from any share.

*Fowler*, for the appellant, cited, *Sheffield* v. *Lovering*, 12 Mass. Rep., 490; *Nash* v. *Cutler*, 16 Pick. Rep., 491; *Kuney* v. *Edmunds*, 15 Mass. Rep., 291; *Mayo* v. *Boyd*, 3 Mass. Rep., 13; *Parker* v. *Nims*, 2 N. H. Rep., 460; *Clark* v. *Russell*, 2 Day's Rep., 172; *Hillhouse* v. *Chester*, 3 Day's Rep., 166; *Brown* v. *Brown*, 1 Chipman's Rep., 360; *Seekaup* v. *Hammer*, 2 Har. & Gill's Rep., 9; *Gordon* v. *Collins*, 3 Mason's Rep., 398.

*Pierce & Minot*, for the appellee, cited, *Sheffield* v. *Lovering*, 12 Mass. Rep., 490; *Nash* v. *Cutler*, 16 Pick. Rep., 499; *Kuney* v. *Edmunds*, 15 Mass. Rep., 291.

Crowell *v.* Clough.

PERLEY, J. In ascertaining the next of kin, entitled to distribution under the English statute, no distinction is admitted between the whole and half blood. 4 Bevin's Ec. Law, 422; *Burnet* v. *Mann*, 1 Vesey, 156.

By our statute, the same persons take the real estate by descent, and the personal estate by distribution; and as a general rule, the half blood and the whole blood, inherit alike.

Except where the statute has given a different rule, we do not look to the source from which an estate has been derived, to determine who shall inherit. *Parker* v. *Nims*, 2 N. H. Rep., 461.

The Revised Statutes, chap., 166, §§ 1, 2, provide as follows:

*Sec.* 1. "The real estate of every person deceased, not devised, &c., shall descend in equal shares:

*First*, to the children of the deceased, and the representatives of such of them as are dead.

*Second*, if there be no issue, to the father, if he is living.

*Third*, if there be no issue, nor father, in equal shares, to the mother, and to the brothers and sisters, or their legal representatives.

*Fourth*, to the next of kin, in equal shares.

*Sec.* 2. "If any person shall die under age and unmarried, his estate derived by descent, or devise, from his father or mother, shall descend to his brothers and sisters, or their legal representatives, if any, to the exclusion of the other parent."

In this case, on any construction of the statute, the estate of the deceased, inherited from her father, will not go to her heirs and next of kin, as it would if it had come to her from another source. She died under age, and unmarried, and her mother, who, under the general rule of distribution and descent, would share with the brothers and sisters, is excluded by the statute. The statute then looks to the source from which the estate is derived, and for this purpose regards the estate of the father as still in a course of distribution.

When the child dies under age and unmarried, no new relation is contracted to create new claims on the estate, and the child has no legal capacity to impress a new character upon it,

by any act of ownership. On this ground and reason, the law, by the general and ordinary application of the rule given in the statute, distributes the share of the deceased child in the estate, exactly as if the child had died in the life time of the parent, from whom it was derived. The surviving children do not take under the general rule of descent as heirs and next of kin to the deceased brother or sister; but they take, under the special provision of the statute, the share of the deceased brother or sister as part of the parent's estate.

The same general rule has prevailed in Massachusetts from a very early period, and the varying and ambiguous language there used, in successive statutes down to 1806, has been so interpreted as to give effect to this general intention of leaving the estate of a child dying under age and unmarried, to go among the surviving children of the parent from whom the estate was derived, as if the child had died before the parent.

The same rule was early established in this State. In the act of 4 Geo. I., ch. 78, Provincial Laws, ed. of 1771, p. 105, the provision on this subject was as follows: "If any of the children happen to die before he or she come of age, or be married, the portion of such child, deceased, shall be equally divided among the survivors." This language is too plain for reasonable doubt. By *children* the act must mean the children of the deceased parent before mentioned, and by *survivors* no other person could be intended than such of their children as remained alive.

The terms used in the act of 1789, Laws, ed. of 1815, p. 207, are these: "When any of the children of the intestate die, before twenty-one years of age and unmarried, such child's share shall descend among the surviving brothers and sisters." This statute, it is seen, substitutes for the word *survivors* the phrase, *surviving brothers and sisters.*

Exactly the same change was made in the language of the Massachusetts law, by their statute of 1783, but it was held that there was no intention to change the rule of law on that subject. In *Sheffield* v. *Lovering*, 12 Mass. Rep., 492, speaking of this statute of 1783, it is said: "The language of this

statute seems not so clear as that of the two former; but as it was understood to be a revision of them, and to have a tacit reference to them, and to the legal construction which they had received, and as this opinion was fortified by the use of the word *share*, referring to a portion of the father's estate, and the word *inherit* in the other clause, referring to the other estate of the child, the provision was generally considered the same, as that of the two provincial acts." The reasons are equally strong for holding that our statute of 1789, was intended to be a mere re-enactment of the rule given by the preceding statute, and not to introduce any change in the descent and distribution of intestate estates.

This provision of the statute of 1789, was reënacted in the statute of 1822, which contained the same phrase of *surviving brothers and sisters*, and remained in force till the revision of the statute, in 1842.

In the Revised Statutes, the word *surviving* is ommitted. There is no other change from the preceding law, which can give any aid to the argument that the intention was, by the omission of this word, to change an important rule in the descent and distribution of intestate estates, which had been established in the legislation of the Province and State for more than an hundred years. We cannot bring ourselves to think that the legislature intended to make such a change.

It is to be observed that this variation from the phraseology of the preceding act, was introduced upon a general revision of the statute law. The main object of such a revision is, not so much to change the substance of existing laws, as to methodize and simplify them. If the legislature had passed a separate act, making this, and no other change in the preceding statute, there would be far stronger reason to suppose that they intended to change the substance of the law. The language of different statutes, passed from time to time on the same subject, is not always the most simple and concise. On a revision, the endeavor to reduce them into more brevity and neatness of style, it is believed, has not unfrequently introduced doubt as to the meaning of the new statute, when there was no intention to

Crowell *v.* Clough.

change the operation of the preceding law, which had received a settled construction. Such, we think, was the case here. The word *surviving*, probably appeared· to be entirely redundant. The contingency of there being brothers and sisters of the half blood, not related to the parent from whom the estate was derived, would be very likely to be overlooked. The general principle is retained, that if the child die under age and unmarried, the share of that child shall be regarded as part of the deceased parent's estate. The mother, where the estate came from the father, and the father, where the estate came from the mother, are wholly excluded. Why should the father and the mother be excluded, and their children allowed to take with the children of the deceased parent, from which the estate descended? We think the intention of the legislature was to retain the entire rule, leaving the share of the deceased child to be divided among the surviving children of the deceased parent, so that the whole estate should be distributed as if the child had died in the life time of the parent, and not to introduce an exception to the general operation of the rule, wholly inconsistent with the reason on which it is manifestly founded.

*The decree of the Judge of Probate affirmed.*