CHARLES B. BENSON vs. NATHAN E. SWAN.

*Descent of property.*

By virtue of R. S. of 1857, c. 75, § 1, cl. 6, when a minor dies without having been married, the property which he inherited from his father descends in equal shares to his father's other surviving children, and to the issue of deceased children by right of representation.

Thus a father died leaving a widow and one child by a former wife. Thirteen days after his death, a posthumous child was born and died twenty-four days after its birth. *Held*, that the real estate which the deceased infant inherited from his father, descended to the surviving child to the exclusion of the mother.

R. S. 1857, c. 75, § 1, cl. 6, is not restricted to those cases only where the parent 'leaves a child or children and the issue of one or more deceased children.'

ON REPORT.

WRIT OF ENTRY.

On Dec. 18, 1847, one Drake, owning the land in controversy, conveyed it to Elisha T. Swan, who, on same day, mortgaged back to secure the purchase money.

E. T. Swan was first married Feb. 18, 1850, and had by this wife one child, Martha J. Swan. His wife having died, he married again March 31, 1861, and died Nov. 6, 1862. On Nov. 19, 1862, the surviving widow gave birth to a child, which died Dec. 12, 1862, these two children being the only children E. T. Swan ever had by both of his wives.

To sustain the plaintiff's title, he introduced the deed from Drake to Swan, and a deed, dated Jan. 20, 1870, from S. S. Brown as guardian of Martha J. Swan, to the plaintiff, with the admission that the proceedings of the guardian were all legal.

To sustain the defendant's title, he put in the mortgage from E. T. Swan to Drake; an assignment of the mortgage to Mehitable B. Swan (E. T. Swan's mother); assignment of same by administrator of Mehitable's estate to A. P. Andrews, quitclaim deed from Maranda K. Swan (second wife and surviving widow of E. T.

Swan, and mother of the posthumous child), to Oren B. Swan, warranty deed of the latter to the defendant.

It appeared in evidence, that E. T. Swan paid to Drake the sum and interest secured by the mortgage, and took up the notes; and that Drake, at the request of Swan, then assigned the mortgage to Mehitable, Elisha's mother.

The court to render such judgment as the law and evidence required.

*E. G. Harlow,* for the plaintiff.

*A. Black,* for the defendant.

KENT, J. Elisha T. Swan died in Nov. 1862, leaving a wife and one child by a former wife, named Martha J. Swan. Thirteen days after his death a posthumous child was born. These two children, it is admitted, were his sole heirs. The infant died twenty-four days after its birth.

The principal question, in this case before us, is whether the surviving child took the estate, which came to the infant from its father, or whether it descended to her and its mother. If the former, then the plaintiff, having acquired all the estate of the surviving child, is entitled to recover the whole of the demanded premises.

On a review of the legislation, both colonial and by the Commonwealth of Massachusetts, and by this State, it is evident that a distinction has always been made in the descent of the general estate of an intestate, between what he has himself acquired, and which he leaves at his death, whether he is then of age or not, and the specific and distinct estate which he inherits from a parent. In the latter case, when he dies a minor, never having been married, the law intends that the specific, inherited estate shall, in effect, go back to the parent's estate and become a part of it, as if the child had died before the parent. This is the view of Chief Justice Shaw

in *Nash* v. *Cutler*, 16 Pick. 499; *Renney* v. *Edwards*, 15 Mass. 291; *Sheffield* v. *Lovering*, 12 Mass. 491.

The distinction and the reason for it are both obvious. The child having died a minor, never having been married, and having received a portion of the estate of his parent, which he leaves, the law deems it just, that this share of the parent's estate should go to the other children or grandchildren.

There have been some changes of phraseology in the different statutes, but the leading idea and purpose has, we think, been preserved in all of them. In our State, the first statute of descents in 1821, c. 38, § 17, contains a proviso to all the rules for distribution, qualifying each, in these words: ' Provided, however, that when any child shall die, under age, not having been married, his share of the inheritance, that came from his father or mother, shall descend in equal shares to his father's or ,mother's other children, then living, and to the issue of such other children as are then dead, if any, by right of representation.'

This seems to be plain and unequivocal. *Nash* v. *Cutler, ante.*

The revision in 1841 changes the phraseology somewhat. The provision on this subject, c. 93, § 1, is as follows:

' Sixthly. Provided, however, that if any person shall die, leaving several children, or leaving one child, and the issue of one or more others, and such surviving child shall die under age, not having been married, all the estate which came to the deceased child by inheritance from such deceased parent, shall descend in equal shares to the other children of the same parent, and to the issue of such other children who shall have died, by way of representation.'

The R. S. of 1857, c. 75, § 1, were in force when the intestate died. The section is in these words: ' When he leaves a child or children, and the issue of one or more deceased children, and one of those surviving children dies, without having been married, and under age, the share of his father's estate that descended to him, descends in equal shares to the other children of his father, and to the children and grandchildren of those deceased, by right of repre-

sentation, in equal shares, if they are all of the same degree of kindred, otherwise according to the right of representation.'

In the year 1870, many of the statutes relating to probate matters were revised by a convention of the judges of probate, and the same were simplified, condensed, and improved. The legislature adopted these recommendations, and by act of 1870, c. 113, § 26, 6th specification, struck out the former provision in the R. S. of 1857, and inserted this in its place: 'Sixth. When a minor dies, unmarried, leaving property inherited from either of his parents, it descends to the other children of the same parent, and the issue of those deceased, in equal shares, if all are of the same degree of kindred, otherwise according to the right of representation.' This law of 1870 is incorporated into the recent revision of 1871, c. 75, § 1.

It should be added, that, in all the foregoing statutes, the provision is made that when all are in the same degree they shall inherit equally, otherwise by right of representation.

The only point made in this case on the construction of the statute of 1857, is whether the provision can be applied to a case, unless the parent left a child, or children and grandchildren, the issue of one or more deceased children. It is claimed that according to the language, the provision is restricted to those cases where there are not only children, but grandchildren, and, therefore, the law cannot be applied to this case.

It is undoubtedly true, that in the revisions, the language has got a little mixed. But we do not perceive any intention on the part of the legislature to change or limit the provisions clearly set out in the original statute, by the change of phraseology. We should require the most positive and unmistakable evidence of such intent, because such a construction as is contended for, would be clearly in contravention of the spirit and intent of the provision.

The object, as before stated, was to secure the inherited property (and that alone) of an unmarried minor to the estate of the deceased parent. When it is restored to that estate, it is to go to his children, living or dead,—to the living equally, to the dead by representation. Can any sensible reason be given why this should

not be done when there are only living children?   Living children
are the first objects of a parent's bounty, and it would be a singular,
if not an absurd law, which should require the existence of a grand-
child, before the child could inherit.   In the revision of 1841, the
language is, ' die leaving several children, or leaving one child and
the issue of one or more others.'   This, if literally interpreted,
would give to the living children, if there were more than one, a
right to inherit, although there were no grandchildren, but if but
one living child, then he could not inherit, unless there was a
grandchild.

The intention of the legislature, by the use of these different
forms of expression, was to cover all possible contingencies, but not
to exclude a child, unless all the possible contingencies existed in
the given case.   This view is confirmed by the last expression of
the legislative will in 1870.   But we find a provision in the con-
cluding words of the section in question, which clearly shows that
the legislature recognized the right of a child to inherit, when there
was no grandchild.   After providing that the estate of the deceased
minor child shall descend in equal shares to the other children of
his father, and to the children and grandchildren of those deceased,
by right of representation, it is added, ' in equal shares if they are
all of the same degree of kindred, otherwise according to the right
of representation.'   This clearly shows that there may be cases
within this section where all take equally, being children, or all
goes to one.   If the provisions of this section could only apply to a
case where there were both children and grandchildren, they could
not be all of the same degree of kindred, and yet the law evidently
contemplated a case, where all were of equal degree.

The result is, that Martha J. Swan inherited the whole estate in
question.   The demandant, by his plea of the general issue, admits
himself to be in possession, claiming a freehold.

The mortgage given by Elisha T. Swan to Drake, cannot avail
in the defense, even if the evidence was admissible under the
pleadings.   The case is referred to us with jury powers, and we find
that on the evidence that the mortgage was paid by the mortgagor

before his death, and although, at his request, a formal assignment was made to his mother, yet that was for his use and benefit, and subject to his control, and the mortgage cannot be upheld as against him or his estate.      *Judgment for demandant for seisin and possession of all the land and estate demanded in his writ and declaration.*

APPLETON, C. J.; WALTON, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.