ALLEGANY COUNTY.—HON. CLARENCE A. FARNUM,
SURROGATE.—May, 1889.

MATTER OF PENDLETON.

*In the matter of the application for the probate of the will of* SARAH PENDLETON, *deceased.*

The testatrix at the time of making her will was under the control of a commission of lunacy. She left on certain conditions, all her property to her nephew with whom she had lived for years, and who had been opposing the attempts of the other relatives to wrest her property from her, the disposition being the same as was made by a previous will when testatrix' sanity was unquestioned, and the will was made with the express intention of defeating an alleged will which the testatrix denied having made, and which, it was claimed, left all her property to her other relatives except her nephew. One of the subscribing witnesses had known her since his boyhood, and the other was a physician of forty years standing, and they both testified that at the time of the execution of the will she was sane. *Held*, that the will should be admitted to probate.

APPLICATION for the probate of a will.

ELBA REYNOLDS, *for* JAMES PENDLETON, *executor, proponent.*

WILLIAM SPARGUE, *for* SOLOMON PENDLETON *and others next of kin, contestants.*

THE SURROGATE.—The decedent, Sarah Pendleton, never was married, and for many years prior to her death owned a small farm in the town of Amity, this county, which had been managed by her, or carried on by her nephew, James Pendleton. It appears that for more than twenty years before she died, she had lived in the family of James Pendleton, or he had

been caring for her interests. From the earliest period in the history of the case nearly all of the parties interested in this contest, other than James, had been actively engaged in litigation with her, seeking to deprive her of the lands disposed of by will, and during all that time James had been caring for her interests, and assisting her in meeting such claims. A son could not have been more devoted to her interests, nor provided for her wants better than has been done by James. In the spring of 1883, in a proceeding duly instituted for that purpose, Sarah Pendleton was adjudged to be of unsound mind, and incompetent to manage her estate, and a committee thereupon was appointed of her person and estate, which appointment remained in force until her death, March 24, 1888. May 14, 1888, Solomon W. Pendleton, a brother of the decedent, filed in this court a petition wherein he asked for the probate of the will of Sarah Pendleton, alleging that he was a legatee named therein. Upon the return of the citation it was claimed that the will sought to be established had been lost or destroyed, the petitioner claiming that September 30, 1876, she made such will, which was drafted by Samson Cline and witnessed by him and his son Alvin Cline, in which will she gave all her property to her brothers and sisters, and to her nephews and nieces where the parents of such nephews and nieces were dead. Under this will James would take nothing. After this proceeding had been pending some time, James Pendleton filed with this court a petition setting forth that on August 2, 1871, the said Sarah Pendleton had made her will wherein

he was a devisee and legatee, and with such petition filed a paper purporting to be such will. At the same time Myron S. Davis filed his petition, alleging that November 14, 1883, the said Sarah Pendleton had made her last will and testament which named him as the executor thereof, and filed with the petition a paper purporting to be such will. Solomon Pendleton and the others of the next of kin and heirs-at-law of the deceased, except James, filed objections to such papers dated August 2, 1871, and November 14, 1883, alleging that they were made under duress, and that at the time of the making of the will of November, 1883, the said Sarah Pendleton was incompetent to make a will.

There is no question but that the will bearing date August 2, 1871, was properly executed, and that Sarah Pendleton was then competent to make a will, and that it should stand and be admitted to probate as her last will and testament unless it had been revoked by the execution of a later will. I shall not review the evidence given upon the issue as to the alleged execution of the will bearing date September 30, 1876, and might be content in saying that the testimony of Samson Cline and Alvin Cline, the two alleged witnesses to said will, is so at variance concerning its execution, that the proponent has failed to satisfy me of its execution; but the facts demand the affirmative finding that Sarah Pendleton never made any will which was witnessed by Samson Cline or Alvin Cline. The proof is uncontradicted that all the statutory requirements were observed in the execution of the paper bearing date November 14, 1883,

witnessed by Dr. Benjamin Norton and Addison Van Campen.    The only ground for objection to this paper is that Sarah Pendleton was not of sound mind, and competent to make a will, at the time of its execution. All the heirs-at-law and next of kin contend that as a matter of law this paper is void, the decedent being under the control of a committee at the time it was made.    In order to sustain this paper as the will of Sarah Pendleton it must appear that when she executed it she had sufficient mental capacity to comprehend the condition of her property, her relations towards the persons who are or might be the objects of her bounty, and the scope and bearing of the provisions of her will.    The appointment of a committee of the person and estate of the decedent was *prima facie* evidence of incapacity to make a will, which, however, may be rebutted by competent proof.    This subject is very carefully considered in Lewis v. Jones, 50 *Barb.* 645, and it was there held that a will made by an habitual drunkard while under a committee was not for such reason void, and that the existence of the commission was only *prima facie* evidence of incapacity.    In Sergeson v. Sealey, 2 *Atk.* 412, it was ruled that an inquisition in lunacy is always admitted to be read, but is not conclusive evidence and may be traversed.    It was so held in Hall v. Warren, 9 *Ves.* 605; Stone v. Damon, 12 *Mass.* 488; Breed v. Pratt, 18 *Pick.* 115; Garnett v. Garnett, 114 *Mass.* 379. See, also, *Schouler on Wills*, § 81.

When this paper was executed the decedent was seventy-seven years of age, and was then living with James Pendleton.    He was then caring for her in-

terests, and had just been engaged in her behalf in a suit brought by her committee to set aside a deed made by her in the spring of 1883 to Solomon Pendleton. Upon the trial of that action, Samson Cline testified that he had drawn a will for Sarah Pendleton. Immediately after the giving of such testimony she had a conversation with Samson Cline, and denied that she had made any will drawn by him. Shortly after this she consulted counsel concerning the matter, and wanted it arranged that this alleged will should not affect her estate, and the result was the making of the will dated November 14, 1883. By this will all her property is given to James Pendleton conditioned that he shall care for her insane sister Sally during her life. This will makes precisely the same disposition of her property as was made by the will of August, 1871, when there was no question concerning her sanity, and was made for the express purpose of defeating the will claimed to have been drawn by Samson Cline, should such a one ever be offered for probate. Her property is disposed of in this will as had been her manifest intention at the time when she was competent and her property passed to the only one who had been attentive to her interests, and kind to her in her old age. It is such a disposition of her property as under the circumstances would be natural. Those of her next of kin who had been attempting to wrest her property from her during her life were deprived of any part of it, and such action was not unnatural or unjust under the circumstances. Had she at this time, as is alleged she did in 1876, given all her property to her next of kin who had been bitterly

warring against her interests, it would have been strong evidence of incompetency. No act of incompetency was testified to upon the trial. No change was shown in her condition wherein she conducted her affairs in a different manner than she had for 20 years previously. Some acts of a trivial nature were detailed by non-professional witnesses, who stated that such acts impressed them as irrational. No act, however, is shown by which she made, or attempted to make, poor or foolish bargains concerning her property other than, perhaps, the conveyance to Solomon. It is quite probable that a committee of her estate was appointed, so that those around her should not in her old age and dependent condition obtain her property by overpersuasion. Addison Van Campen, one of the attesting witnesses, had known the decedent ever since he was a lad, and pronounced her of sound mind, and competent. The other witness, Dr. Norton, who was a physician of forty years practice, had a long interview with her at the time the will was executed, and he unhesitatingly pronounced her competent to make a will. All the evidence shows that this will was the unrestrained and voluntary act of Sarah Pendleton, and that she thoroughly understood the nature and effect of it. Were it not for the appointment of the committee in lunacy, there could have been very little ground for the claim that she was not competent to make a testamentary disposition of her estate. The force of such adjudication cannot be considered strong when we bear in mind that, ordinarily, the main object in appointing a committee is to deprive the party of managing his own estate because

he is incompetent to have the care of it, and would be likely to squander it. Schouler on Wills, § 81. It is clear to my mind that at the time of the execution of the will dated November 14, 1883, Sarah Pendleton understood the nature and extent of her property; her relations to her heirs-at-law and next of kin; that she was giving all of her property to her nephew, and depriving all of her other relatives of any interest therein; and that she was of sound and disposing mind,—and such paper will therefore be admitted to probate as a valid will of real and personal estate, and a decree will be entered accordingly.