### In re PENDLETON'S WILL.

(*Surrogate's Court, Allegany County.* May 25, 1889.)

WILLS—TESTAMENTARY CAPACITY.

At the time of executing a will, testatrix was 77 years of age. She left all her property to her nephew, with whom she had lived for many years, on a certain condition, the disposition being the same as was made by a previous will at a time when testatrix's mental capacity was not questioned. The nephew had cared for testatrix, and looked after her interests, while her other relatives had been attempting to wrest her property from her. The will was made with the express intention of defeating another alleged will, which testatrix denied making, and which, it was claimed, left all her property to her other relatives, excluding the nephew. The subscribing witnesses to the will—one of whom had known her since he was a lad, and the other of whom was a physician of 40 years' practice, and had a long interview with testatrix at the time of the execution of the will—pronounced her competent. *Held*, that testatrix was competent, and the will valid, though she was at the time under the control of a committee in lunacy.

On application for the probate of the alleged will of Sarah Pendleton, deceased.

*Elba Reynolds*, for James Pendleton. *William Spargur*, for Solomon Pendleton and others, next of kin.

FARNUM, S. The decedent, Sarah Pendleton, never was married, and for many years prior to her death owned a small farm in the town of Amity, this county, which had been managed by her or carried on by her nephew James Pendleton. It appears that for more than 20 years before she died she had lived in the family of James Pendleton, or he had been caring for her interests. From the earliest period in the history of the case nearly all of the parties interested in this contest, other than James, had been actively engaged in litigation with her, seeking to deprive her of the lands disposed of by will, and during all that time James had been caring for her interests and assisting her in meeting such claims. A son could not have been more devoted to her interests, nor provided for her wants better, than has been done by James. In the spring of 1883, in a proceeding duly instituted for that purpose, Sarah Pendleton was adjudged to be of unsound mind, and incompetent to manage her estate, and a committee thereupon was appointed of her person and estate, which appointment remained in force until her death March 24, 1888. May 14, 1888, Solomon W. Pendleton, a brother of the decedent, filed in this court a petition wherein he asked for the probate of the will of Sarah Pendleton,

alleging that he was a legatee named therein. Upon the return of the cita-
tion it was claimed that the will sought to be established had been lost or de-
stroyed, the petitioner claiming that September 30, 1876, she made such will,
which was drafted by Samson Cline and witnessed by him and his son Alvin
Cline, in which will she gave all her property to her brothers and sisters, and
to her nephews and nieces where the parents of such nephews and nieces were
dead. Under this will James would take nothing. After this proceeding had
been pending some time James Pendleton filed with this court a petition set-
ting forth that on August 2, 1871, the said Sarah Pendleton had made her will
wherein he was a devisee and legatee, and with such petition filed a paper pur-
porting to be such will. At the same time Myron S. Davis filed his petition,
alleging that November 14, 1883, the said Sarah Pendleton had made her last
will and testament which named him as the executor thereof, and filed with
the petition a paper purporting to be such will. Solomon Pendleton and the
others of the next of kin and heirs at law of the deceased, except James, filed
objections to such papers dated August 2, 1871, and November 14, 1883, al-
leging that they were made under duress, and that at the time of the making
of the will of November, 1883, the said Sarah Pendleton was incompetent to
make a will.

There is no question but that the will bearing date August 2, 1871, was
properly executed, and that Sarah Pendleton was then competent to make a
will, and that it should stand and be admitted to probate as her last will and
testament unless it has been revoked by the execution of a later will. I shall
not review the evidence given upon the issue as to the alleged execution of
the will bearing date September 30, 1876, and might be content in saying that
the testimony of Samson Cline and Alvin Cline, the two alleged witnesses to
said will, is so at variance concerning its execution that the proponent has
failed to satisfy me of its execution; but the facts demand the affirmative find-
ing that Sarah Pendleton never made any will which was witnessed by Samson
Cline or Alvin Cline. The proof is uncontradicted that all the statutory re-
quirements were observed in the execution of the paper bearing date Novem-
ber 14, 1883, witnessed by Dr. Benjamin Norton and Addison Van Campen.
The only ground for objection to this paper is that Sarah Pendleton was not
of sound mind, and competent to make a will at the time of its execution.
All the heirs at law and next of kin contend that as matter of law this paper
is void, the decedent being under the control of a committee at the time it was
made. In order to sustain this paper as the will of Sarah Pendleton it must
appear that when she executed it she had sufficient mental capacity to com-
prehend the condition of her property, her relations towards the persons who
are or might be the objects of her bounty, and the scope and bearing of the
provisions of her will. The appointment of a committee of the person and
estate of the decedent was *prima facie* evidence of incapacity to make a will,
which, however, may be rebutted by competent proof. This subject is very
carefully considered *Lewis* v. *Jones,* 50 Barb. 645, and it was there held that
a will made by an habitual drunkard while under a committee was not for
such reason void, and that the existence of the commission was only *prima
facie* evidence of incapacity. In *Sergeson* v. *Sealey,* 2 Atk. 412, it was
ruled that an inquisition in lunacy is always admitted to be read, but is not
conclusive evidence, and may be traversed. It was so held in *Hall* v. *War-
ren,* 9 Ves. 605; *Stone* v. *Damon,* 12 Mass. 488; *Breed* v. *Pratt,* 18 Pick. 115;
*Garnett* v. *Garnett,* 114 Mass. 379. See, also, Schouler, Wills, § 81. When
this paper was executed the decedent was 77 years of age, and was then living
with James Pendleton. He was then caring for her interests, and had just
been engaged in her behalf in a suit brought by her committee to set aside a
deed made by her in the spring of 1883 to Solomon Pendleton. Upon the trial
of that action Samson Cline testified that he had drawn a will for Sarah Pen-
dleton. Immediately after the giving of such testimony she had a conversa-

tion with Samson Cline, and denied that she had made any will drawn by him. Shortly after this she consulted counsel concerning the matter, and wanted it so arranged that this alleged will should not affect her estate, and the result was the making of the will dated November 14, 1883. By this will all her property is given to James Pendleton, conditioned that he shall care for her insane sister Sally during her life. This will makes precisely the same disposition of her property as was made by the will of August, 1871, when there was no question concerning her sanity, and was made for the express purpose of defeating the will claimed to have been drawn by Samson Cline, should such a one ever be offered for probate. Her property is disposed of in this will as had been her manifest intention at a time when she was competent and her property passed to the only one who had been attentive to her interests, and kind to her in her old age. It is such a disposition of her property as under the circumstances would be natural. Those of her next of kin who had been attempting to wrest her property from her during her life were deprived of any part of it, and such action was not unnatural or unjust under the circumstances. Had she at this time, as is alleged she did in 1876, given all her property to those of her next of kin who had been bitterly warring against her interests, it would have been strong evidence of incompetency. No act of incompetency was testified to upon the trial. No change was shown in her condition wherein she conducted her affairs in a different manner than she had for 20 years previously. Some acts of a trivial nature were detailed by non-professional witnesses, who stated such acts impressed them as irrational. No act, however, is shown by which she made, or attempted to make, poor or foolish bargains concerning her property other than, perhaps, the conveyance to Solomon. It is quite probable that a committee of her estate was appointed, so that those around her should not in her old age and dependent condition obtain her property by overpersuasion. Addison Van Campen, one of the attesting witnesses, had known the decedent ever since he was a lad, and pronounced her of sound mind, and competent. The other witness, Dr. Norton, who was a physician of 40 years' practice, had a long interview with her at the time the will was executed, and he unhesitatingly pronounced her competent to make a will. All the evidence shows that this will was the unrestrained and voluntary act of Sarah Pendleton, and that she thoroughly understood the nature and effect of it. Were it not for the appointment of the committee in lunacy there could have been very little ground for the claim that she was not competent to make a testamentary disposition of her estate. The force of such adjudication cannot be considered strong when we bear in mind that, ordinarily, the main object in appointing a committee is to deprive the party of managing his own estate because he is incompetent to have the care of it, and would be likely to squander it. Schouler, Wills, § 81. It is clear to my mind that at the time of the execution of the will dated November 14, 1883, Sarah Pendleton understood the nature and extent of her property; her relations to her heirs at law and next of kin; that she was giving all of her property to her nephew, and depriving all of her other relatives of any interest therein; and that she was of sound and disposing mind,—and such paper will therefore be admitted to probate as a valid will of real and personal estate, and a decree will be entered accordingly.