## WADSWORTH *against* SHARPSTEEN and MOFFAT executors of Sherman.

After one has by inquisition been found a habitual drunkard, he can not until it is vacated, or a commission thereon superseded, even in his sober intervals, make contracts to bind himself or his property.

Proceedings against one as a habitual drunkard are analogous to proceedings *in rem*, and are presumed to be known to all who subsequently deal with him

Accordingly, where the endorser of a bill of exchange who had prior to its maturity been found a habitual drunkard, by a written instrument made after such finding and before the appointment of a committee and while sober, waived notice of protest, in consequence of which the holder omitted to have notice served; held that the waiver was void. WILLARD, J., *dissented*.

This action was originally brought by leave of the court of chancery against James N. Sherman, the defendants'

Wadsworth *against* Sharpsteen and Moffat.

testator, then a habitual drunkard under the charge of a committee, as an endorser upon a bill of exchange. The bill was dated July 9, 1845, payable six months after date to the order of the drawer, and by him endorsed, and subsequently endorsed by Sherman. On the 18th day of December, 1845, a petition was presented to the court of chancery, praying a commission in the nature of a writ *de lunatico inquirendo*, to inquire into the habitual drunkenness of Sherman. The commission was thereupon issued, and an inquisition taken in pursuance thereof on the 31st day of December, 1845, by which it was found that he was by reason of habitual drunkenness incapable of governing himself and of conducting his affairs. On the 5th day of January, 1846, Sherman, with the other parties to the bill, executed to the holder a written instrument waiving notice of nonpayment and protest, in consequence of which the bill was not protested. After the action was commenced, the defendant Sherman died, and the present defendants who were his executors were substituted in his place.

The cause was tried at the Livingston circuit, in December, 1847, before Mr. Justice HOYT. After the facts above stated were given in evidence, the plaintiff's counsel offered to show that at the time Sherman signed the waiver of notice of protest, he was sober and competent to transact business. The court excluded the evidence, and ruled that unless the plaintiff could charge him with notice of nonpayment in some other way than by the waiver, the proof would amount to nothing. The plaintiff's counsel then offered to show that at the time the waiver was received he had no notice nor knowledge of the proceedings against Sherman as a habitual drunkard or of the inquisition. The court excluded this evidence.

The counsel for the plaintiff then asked the said justice to exclude from the evidence the inquisition and commission, upon the following grounds, viz:

1. The inquisition had not been returned when the

waiver of notice of nonpayment and of protest of the draft was signed and delivered.

2. That no commission to appoint a committee for the defendant had been issued at the time the waiver of notice was made and delivered.

3. As this draft is commercial paper, it is not affected by the inquisition, in the hands of a bona fide holder for a valuable consideration, who had no notice or knowledge of the proceedings.

4. Because there is no final order appointing a committee of the person and estate of the defendant.

The justice refused to exclude the inquisition and ordered the jury to find a verdict for the defendant and exceptions were taken to the ruling.

A judgment in favor of the defendant was entered which was affirmed at a general term of the supreme court in the eighth judicial district. The plaintiff appealed therefrom.

*O. Hastings*, for appellants. — If the inquisition is in all respects regular and the proceedings under it valid, it is not conclusive against the plaintiff who is a bona fide holder of commercial paper, and took the waiver of notice of nonpayment and of protest in good faith without notice or knowledge of the proceedings — he should therefore have been allowed to prove that the defendant, at the time he signed the waiver, was perfectly sober and competent to transact business. The inquisition is not competent in such a case, because that was an act by which the plaintiff was induced to hold the draft and not present it at the place of payment, and have it protested. It is a well settled principle that no man shall be permitted to take advantage of his own wrong. Now if the defendant was incapable of making a contract that would bind him, he was not incapable of committing a wrong for which he would be liable. If this waiver of protest is void as a contract, it is a fraud practiced by the defendant upon the plaintiff to prevent

Wadsworth *against* Sharpsteen and Moffat.

him from presenting and protesting the draft. Where one party to a contract fraudulently induces the other party to omit performance on his part, the party guilty of such fraud can not take advantage of such nonperformance.

The waiver of protest, whether viewed as a contract or a fraudulent device on the part of the defendant, dispenses with presentation and protest of the draft.

*H. R. Selden*, for respondents.

RUGGLES, Ch. J. — When a man has been found by inquisition duly taken in pursuance of the statute to be incapable of conducting his own affairs in consequence of habitual drunkenness, his property, real and personal, is taken out of his hands, and put into the custody and control of a committee. The object of this proceeding, as declared in the statute, (2 *R. S.* 52,) is to prevent the property being wasted and destroyed; and to provide for the maintenance of himself and his family and the education of his children. The committee is required to file an inventory of the property and to give security for the performance of the trust. This trust continues without interruption until the death of the drunkard or the superseding of the commission. The right of the committee to the custody and control of the property is not superseded during the drunkard's sober intervals; and therefore, during such intervals the drunkard has no more authority to deal with, or dispose of the property, than while he is in a state of intoxication. If it were otherwise, the proceedings would furnish a very ineffectual security against waste and improvidence. Every transaction would be open to litigation upon the question whether it took place while the drunkard was in a state of sobriety or intoxication; and the committee could not execute his trust with safety to himself or benefit to the drunkard or his family. Similar consequences would unavoidably follow from permit-

ting the drunkard during sober intervals to contract debts or incur liabilities, by which the property might be seized and sold on judgment and execution. The effect of the inquisition is that the drunkard is incapable at all times of conducting his affairs; and they are therefore taken wholly out of his control. From the very nature and object of the proceeding therefore, the inquisition must be regarded as conclusive evidence of the incapacity of the drunkard to dispose of his property or to contract debts from the time when it is found. This was so decided in *L'Amoreux* v. *Crosby*, 2 *Paige*, 427. And in *Leonard* v. *Leonard*, 14 *Pick*. 283, a decree of the probate court declaring a person *non compos mentis* and putting him under guardianship was held to be conclusive evidence of the disability of the ward against a person dealing with him during his wardship.

It is contended however that the inquisition ought not to be conclusive against the plaintiff, a bona fide holder of the bill on which the action was brought, and who had no notice of the proceeding when he took the defendant's agreement to waive the protest of the draft.

The general rule undoubtedly is, that a decree or other judicial proceeding binds those only who are parties to it. But there are exceptions to this rule. Proceedings *in rem* are conclusive on all the world. (1 *Starkie's Ev.* 246, 7; *Phil. Ed.* 1837.) And inquisitions being made under competent public authority to ascertain matters of public interest and concern, are said to be analagous to proceedings *in rem*, to which no one can strictly be said to be a stranger. They are clearly admissible in evidence. Inquisitions of this nature are public and notorious, and presumed to be known to those who subsequently deal with the subjects of them. And as to all business which the committee is authorized to transact for the drunkard, strangers must deal with the committee and not with the drunkard, until the inquisition is set aside. There can be

no doubt of the authority of the court to order an issue at the instance of a creditor for the purpose of retrying the facts found by the inquisition, and of setting it aside. (5 *Paige*, 242, *In the matter of Christie*; 11 *Paige*, 243, *In the matter of Giles*.) The creditor is therefore not without remedy against an inquisition improperly found. And if the creditor should happen to suffer from making a contract with a drunkard without knowledge of the inquisition, and should thereby sustain a loss, the hardship is no greater than if he dealt with a minor believing him to be of full age. It is his duty to ascertain whether those he deals with have the capacity to contract.

There are many dicta in the books to the effect that inquisitions of lunacy are admissible, but not conclusive evidence. But in all the cases where these dicta are found the question arose upon contracts or conveyances made before the finding of the inquisition. It has been adjudged however, that the inquisition is not conclusive evidence of the lunatic's incapacity to make a will. This is an exception to the general rule, and the reason given for it in the case of *Leonard* v. *Leonard*, 14 *Pick.* 284, is, that this is an act which the guardian can not do for him. And in another case, that the making of a will is an act manifestly distinguishable from contracts and other acts done *inter vivos* and involves no conflict of authority with the guardian, because the will can not operate to any purpose till the death of the testator, and by that same event the authority of the guardian is determined. (18 *Pick.* 116.) To these may be added, as especially applicable to the case of a habitual drunkard, that the chief object of the proceeding by inquisition is the preservation of his property during his lifetime for the benefit of himself and his family, and that the motives which might induce him to make an improper disposition of it during his lifetime, do not exist in relation to a disposition to take effect after his death.

The judgment of the supreme court should be affirmed.

Sel. IV.—50

GARDINER, JEWETT, JOHNSON, MASON, MORSE and TAGGART, JJ., concurred with the chief judge

WILLARD, J., (dissenting.)    The material question in this case is whether an inquisition finding a party a lunatic on a particular day, is conclusive evidence of his lunacy from that time and can not be disproved.    I am of opinion that it is not, but that it is *prima facie* evidence only of incapacity.    The learned judge followed a dictum of the chancellor in *L'Amoreux* v. *Crosby*, (2 *Paige*, 427,) in which he says that all gifts of the goods and chattels of the idiot, lunatic or drunkard, and all bonds and other contracts made by him after the actual finding of the inquisition, declaring his incompetency, and until he is permitted to assume the control of his property by the permission of the court, are utterly void.    He cites for this doctrine *Beverley's case*, (4 *Coke R.* 123, and *White* v. *Palmer*, (4 *Mass.* 147.)    The case before him did not require him to establish such a rule.    Had the inquisition been merely *prima facie* evidence of incompetency, there was sufficient grounds to set aside the judgment in that case  But the part of *Beverley's* case, cited by the chancellor, relates to the case of idiots alone, with respect to whom the presumption is that the disability will continue during life.    A distinction is taken in the same case between idiots and lunatics.    In the latter case the king has not an interest as he has in the idiot, because the *lunatic may recover his memory which he has lost*.    The alienation, gift, &c. after, office found of him who is *non compos mentis* are in equal case with the alienation or gift of an idiot; but this means while the infirmity continues.    The form of the writ founded on the inqustion, in the two cases of idiocy and lunacy, indicates that the one may recover and the other not.    In *White* v. *Palmer*, (4 *Mass.* 149,) the court treated an inquisition finding a party *non compos mentis*, as *prima facie* evidence of the fact, and competent evidence to be submitted to the jury when the

Wadsworth *against* Sharpsteen and Moffat.

issue was as to his capacity to contract, &c., as between the lunatic and his committee, it is doubtless conclusive until set aside. (15 *Mass.* 280.)

This subject has several times been incidentally passed upon by our courts. In *Hart* v. *Deamer*, (6 *Wend.* 497,) on an issue to determine whether the defendant was a lunatic at the time he executed a bond, an inquisition under a writ *de lunaticio inquirendo*, finding that the defendant was a lunatic and of unsound mind, and enjoyed no lucid intervals, was held by the court to be admissible in evidence. Savage, Ch. J., said it was *prima facie* evidence but not conclusive. In *Osterhout* v. *Shoemaker*, (3 *Hill*, 513,) Bronson, J., considers this to be law, but the case did not require a discussion of the doctrine. Mr. Phillips (*Evidence*, vol. 1, 375) lays down the rule that an inquisition of lunacy is evidence of the fact, but not conclusive. The same principle is laid down by Starkie, (1 *Stark. Ev.* 245,) and by Greenleaf, § 559.

Lord Hardwick, in *Sergeson* v. *Sealey*, (2 *Atk.* 412,) permitted an inquisition of lunacy to be read, but said that it was not conclusive because it might be traversed. The fact that it may be traversed by a party where a conveyance is overreached by it, shews that it is only *prima facie* evidence and may be repelled. (*Matter of Christie*, 5 *Paige*, 242.) In *Breed* v. *Pratt*, (18 *Pick.* 115,) the supreme court of Massachusetts held that the fact that the testator was under guardianship as a lunatic, did not disqualify him from making a will, if he was shown to be of sound mind. To the same effect is *Stone* v. *Damon*, (12 *Mass.* 488;) and see *C. & H. Notes*, 942, where several other cases are collected. The cases do not make any distinction where the act is overreached by the inquisition, whether it was committed *before* or *after* the time when the inquisition was found. There can be no difference in principle between the two cases. If a party can make a will while under a commission, he can, in a lucid interval, do other acts binding himself. He can not, indeed, resume the control of

his estate without the aid of the court, because that is placed out of his reach. And of course all gifts of his goods and chattels, and contracts affecting them while his estate is under the control of the committee, must necessarily be void. But no reason is perceived why the lunatic may not be bound by a contract made in a lucid interval, whether he be under a commission or not. An action, indeed, can not be sustained against him for a breach of such contract, nor can an execution be enforced against his property, without leave of the court.

The learned judge who delivered the opinion of the supreme court in the matter of Patterson, (4 *Howard's Pr. Rep.* 34,) expressed the opinion that while a commission remains in force, a lunatic though restored to his reason, can not make a valid will without leave of the court; and that to enable him to do so, the commission should be suspended, *quoad hoc,* and leave for that purpose granted, as was done by the chancellor in the matter of *Burr,* (2 *Barb. Ch. R.* 208.) A will stands upon a different footing in some respects, from a contract to be executed *inter vivos,* in as much as it does not take effect until death has put an end to the commission. Still I apprehend the sole object of the partial suspension of the commission to enable a lunatic to make a will, is to remove the *prima facie* presumption against its validity, which would exist if the commission was in force. The party setting up the will of a deceased lunatic must establish the fact, that at the time of its execution the testator was of sound disposing mind and memory, and not under restraint. This fact is essential to be proved, whether he was under a commission or not. The only difference between the two cases is, that in case the testator making the will was in the custody of a committee under a commission of lunacy, his executors, to prove the will, must overcome the *prima facie* presumption of incompetency arising from the condition of the testator. The general rule is, that every person, not under a commission, is presumed to be sane until the contrary appears.

Wadsworth *against* Sharpsteen and Moffat.

But with respect to a person against whom an inquisition of lunacy has been found, the *prima facie* presumption is that his lunacy continues until the commission is revoked. To establish a will of a party under a commission it is not enough merely to prove the statutory requirements, but further evidence must be given, enough to remove the presumption of continued insanity arising from an unrevoked commission.

If the lunatic has mind enough to make a will, he can make any other contract. Such contract, however, can not be enforced without the leave of the court under whose control the lunatic and his estate are placed. The present action was brought by leave of the late court of chancery, which had awarded the commission. I think the court erred in excluding the evidence offered to show that the lunatic *was sober and competent to transact business* at the time he signed the written waiver of nonpayment and notice of protest. Had the evidence been received, and had it led to the recovery of a judgment against the lunatic, it could not have been enforced upon his property under the control of the court, without its leave.

I think the judgment of the supreme court should be reversed and a new trial ordered with costs to abide the event

Judgment affirmed.