Redden *et al. v.* Baker, Guardian.

———————◆———————

No. 9716.

REDDEN ET AL. *v.* BAKER, GUARDIAN.

INSANITY.—*Contract.*—The contracts of a person duly adjudged insane are void.

SAME.—*Continued and Conclusive Effect of Adjudication.—Notice.*—The disability of insanity, once established by an adjudication under the statute, continues and is conclusive until the restoration of reason has been determined in the manner prescribed by the statute, and the world must take notice of it.

SAME.—*Appointment of Guardian.*—The adjudication has no less force before than after the appointment of a guardian, and is not affected by a discharge of the guardian upon a final settlement of his accounts.

SAME.—*Marriage and Change of Name.*—The marriage and consequent change of name of a female insane ward does not affect the force of the adjudication of insanity.

SAME.—*Testamentary Capacity.—Quœre:* Whether or not an adjudication of insanity under the statute is conclusive evidence of testamentary incapacity?

From the Bartholomew Circuit Court.

*J. C. Orr* and *J. N. Wheatley,* for appellants.

*S. Stansifer, W. D. Stansifer* and *C. S. Baker,* for appellee.

WOODS, C. J.—The appellee, as guardian of Martha Collier, insane, brought this action to set aside a conveyance of real estate, alleging, that, on the 21st day of July, 1868, the said Martha was, in a regular proceeding had for the purpose,

found and adjudged to be of unsound mind, and put under the guardianship of William E. Herod; that said adjudication remains in full force; that said Herod, having become a non-resident of the State, was, on the 27th day of March, 1880, removed by order of the court, and the appellee appointed guardian in his stead; that after the adjudication of insanity the said Martha entered into a pretended but void marriage with one Thomas White, and thereafter, on the 14th day of September, 1878, being the owner in her own right of certain real estate (which is described), with said White made a pretended conveyance thereof to the appellant Catharine Redden, wife of her co-appellant Henry. Other facts are averred which need not be rehearsed.

The appellant Catharine filed a separate answer in eight paragraphs, which need not be separately stated, but which show, in substance, that the adjudication of insanity was in July, 1868; that in 1873 said Martha married Thomas White, and was thereafter known as Martha White; that on the 26th day of April, 1873, she received a conveyance to herself by that name of the land in question; that on the 22d day of October, 1873, her guardian Herod made a final settlement report, which was approved, and he was discharged from the guardianship; that the guardianship was so terminated, and, in fact, no guardianship existed over said Martha from Herod's discharge, in 1873, to the year 1880; that, during the time when there was no guardianship, the said appellant, without knowledge or notice of any disability, bought the land in good faith, paying full value therefor.

The court sustained a demurrer for want of facts to the answer, and the question is whether the ruling was right.

The first proposition advanced by the appellant is, in substance, that the contract of a person who, under the statute (2 R. S. 1876, p. 598), has been found and adjudged to be of unsound mind, but, at the time of making the contract, is not under actual guardianship, is not void, but only voidable. In support of this, counsel for the appellant cite from the opinion

in *Crouse* v. *Holman*, 19 Ind. 30, the expression following: "The deed of a person, *non compos mentis*, under guardianship, is void; * the decree and letters of guardianship take from him all capacity to convey; but the deed of such person, not under guardianship, conveys a seizin, it being voidable only, and not void." Similar statements are claimed to be found in *Somers* v. *Pumphrey*, 24 Ind. 231; *Freed* v. *Brown*, 55 Ind. 310; *Wray* v. *Chandler*, 64 Ind. 146; *Hardenbrook* v. *Sherwood*, 72 Ind. 403; *Wait* v. *Maxwell*, 5 Pick. 217 (16 Am. Dec. 391); *Jackson* v. *King*, 15 Am. Dec. 354, *n.* 368; *Mohr* v. *Tulip*, 40 Wis. 66: *Elston* v. *Jasper*, 45 Tex. 409.

The cases referred to, which were decided by this court, did not involve, and are, therefore, not authority for, the distinction which we are now asked to declare. The question seems to be a new one in this State, and probably must be determined as a question of statutory construction rather than purely by principle or by authority alone.

By the second section of the act on the subject, cited *supra*, the forming and trial by jury of an issue is required; and by the third section it is provided that if the jury shall find that the person is of unsound mind, the court shall appoint a guardian for such person, who shall have the custody of his person and the management of his estate. Sections 9, 10 and 11 of the act are as follows:

"Sec. 9. Such guardianship shall terminate with the restoration to reason, or death of the ward.

"Sec. 10. Whenever it is alleged that such person of unsound mind has become of sound mind again, the fact may be tried and determined in the same manner as the allegation of the unsoundness of mind. * *

"Sec. 11. Every contract, sale or conveyance of any person, while a person of unsound mind, shall be void."

In our opinion these provisions must be construed to mean that the incapacity or disability once found and adjudged must continue in full force until in the manner provided in the act

the restoration of mind shall have been tried and determined. Any other view than this must lead to confusion and doubt. The language of the statute, it is true, implies that there shall have been a restoration to reason for some period of time before the fact can be tried and determined, and during such time there can have been in fact no want of mental capacity, but nevertheless it must be held that there was a legal incapacity; else it would be open to proof that there was real capacity—restoration to reason—at any time pending the guardianship, and the adjudication of insanity would at most be an incomplete protection, instead of the perfect shield which the law was designed to make it.

It necessarily follows that there is no place for the proposition that there must be an actual personal guardianship in order to make the disability of the ward complete under the law. It is true that upon the finding of the jury that the person is of unsound mind, it is the duty of the court to appoint a guardian, and the fact of there being such a guardian in charge of the person and estate of the ward may, as counsel argue, be a means of notice and protection to those who might have dealings with the ward; nevertheless, we are convinced that the rule is, and that it would prove unwise and disastrous to hold the contrary, that the adjudication of insanity, or as the phrase is, "office found," establishes the incapacity, and keeps it in force until there has been a judicial determination to the contrary; and of such adjudication, had in the proper court, with jurisdiction properly acquired, the world must take immediate and constant notice until the restoration of reason shall in like manner have been declared.

The fact that there may not at any time be an acting personal guardian can not be allowed to affect the rule. After the adjudication of insanity, there may often be necessary and protracted delay before a suitable person can be found to accept the trust; and so upon the resignation or death, or removal of one who has been acting. It is a mistake, however, in any such case, to say that there is no guardianship. From the time

of the adjudication of insanity until the restoration to reason has been judicially determined, the person so declared to be of unsound mind is the ward of the court; and whether or not at any particular part of this time there is an appointee of the court to take personal charge, in no manner affects the legal status of the ward in respect to his incapacity to make contracts.

While this conclusion is deduced from the language of the statute, it is also well supported by authority. *L'Amoureux* v. *Crosby,* 2 Paige, 422 (22 Am. Dec. 655); *Wadsworth* v. *Sharpsteen,* 8 N. Y. 388; *Wadsworth* v. *Sherman,* 14 Barb. 169; *Fitzhugh* v. *Wilcox,* 12 Barb. 235; *Leonard* v. *Leonard,* 14 Pick. 280; *Imhoff* v. *Witmer's Adm'r,* 31 Pa. St. 243.

In respect to a lunatic's capacity to make a will, a distinction is recognized in some cases, in which it has been held that the inquisition is not conclusive evidence of incapacity in that particular. *Leonard* v. *Leonard, supra; Wadsworth* v. *Sharpsteen, supra; Breed* v. *Pratt,* 18 Pick. 115; *Stone* v. *Damon,* 12 Mass. 488.

Counsel for the appellant insist that their position is directly and explicitly supported by the cases cited *supra,* from Wisconsin and Texas. The Wisconsin case can not be regarded as deciding anything upon the point, either expressly or by implication; and if the other case is more explicit we can not accept it as authority against what we deem to be the proper interpretation of our statute, as well as the better reason and policy.

Counsel next insist that the formal discharge of Herod as guardian, upon his report that his ward had intermarried with White, and that, with the consent of White, he had turned over to her her property, was in effect a termination of the guardianship, and an adjudication of restored reason, upon which the world had a right to act. We do not think so. The court had a right to discharge Herod from the trust, but his application for such discharge could not be made the means of bringing before the court the question whether or not there had been a restoration of the ward's reason. The statute pro-

vides how that fact may be tried and determined, and it was not competent for the court to entertain the question in any other mode of procedure. If, therefore, the court did attempt to determine, in this instance, upon the hearing of the guardian's report, that the ward had been restored to her right mind, it was done without jurisdiction, and the judgment in that respect is without force; and so every one was bound to know.

It is next insisted that by reason of the marriage of the ward and the change in the name by which she was known, and the fact that the property was conveyed to her after the marriage and in her new name, the appellant could not, and was not bound to, know of the guardianship and disability declared under the former name. No authority is cited, and it is evident that the proposition is untenable. The authorities already cited show that an inquisition and judgment of insanity affect the person concerned, in respect to notice, just as a judgment *in rem* affects the thing, and that, for reasons of public policy, the world must take notice of the procedure. The ends sought to be accomplished can not be attained upon any other rule. It necessarily follows that the change of name in this instance in no manner affected the disability or the notice which the appellant was bound to take of it. Indeed, the marriage, according to some of the cases, was a nullity, and, upon proper application, would be so declared by the court.

Judgment affirmed.

---

LIFE INSURANCE.—*Husband and Wife.*—*Assignor and Assignee.*—*Collateral Security.*—*Descent.*—S. took a policy on his life, payable to himself and his assigns, for the benefit of his wife, and paid the premiums until the death of the wife, her husband and two children surviving. S. assigned his