## In re PRESTON'S WILL.

## WELLS v. PRESTON et al.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

1. WILLS—PROBATE—TESTAMENTARY CAPACITY—EVIDENCE—ADMISSIBILITY.

In a will contest, it appeared that the will was executed in March, and that in October, following, a proceeding to have the testator declared incompetent was instituted. The commissioner and jury found that the testator was incompetent, and that such incompetency dated from before November in the year preceding. In December the inquisition was confirmed. *Held*, that the portion of the inquisition finding that the testator was incompetent prior to the time it was taken was inadmissible.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 121.]

2. INSANE PERSONS—INQUISITIONS—STATUTES—CONSTRUCTION.

Under Statutory Construction Law, Laws 1892, p. 1487, c. 677, § 7. defining lunacy to include every kind of unsoundness of mind except idiocy, the word "lunacy," in Code Civ. Proc. § 2335, providing that, where a petition alleges that the person with respect to whom it prays for the appointment of a committee is incompetent by reason of "lunacy," the inquiry with respect to the competency must be confined to the question whether he is incompetent at the time of the inquiry, includes all phases of incompetency, including imbecility arising from old age.

3. WITNESSES—COMPETENCY—INFORMATION ACQUIRED BY PHYSICIAN.

Under Code Civ. Proc. § 834, prohibiting a physician from disclosing any information acquired in attending a patient in a professional capacity, a physician who attended a testator in a professional capacity is not competent to testify in proceedings for the probate of his will on the question of the mental capacity of the testator.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 769.]

4. WILLS—COMPETENCY OF TESTATOR—BURDEN OF PROOF.

The party who asserts that a testator was non compos mentis at the time of the execution of his will has the burden of proving it.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 104.]

Appeal from Surrogate's Court, Suffolk County.

Proceedings by J. Madyson Wells for the probate of the will of Jonathan Preston, deceased, in which H. Stephen Preston and others appeared as contestants. From a judgment denying probate, the proponent appeals. Reversed with directions.

See 93 N. Y. Supp. 283.

On February 11, 1904, William T. Ross, a nephew of Jonathan Preston, instituted proceedings de lunatico inquirendo to have his uncle declared incompetent and for the appointment of a committee of his person and property. On March 2d, following, the commissioner to whom the writ issued, and a jury of 20 men, summoned and sworn as required by law, after hearing the testimony of several witnesses, including the alleged incompetent, united in an inquisition finding Preston a person of sound mind and capable of governing himself and managing his affairs and property and properly caring for the same. On May 25, 1904, the motion of counsel for the alleged incompetent to confirm the inquisition was denied at Special Term, and an order made directing the issuance of another commission to the same commissioner to "inquire by a jury of Suffolk county, where the alleged incompetent person resides, whether said Jonathan Preston is a person incompetent to manage himself or his affairs in consequence of imbecility arising from old age or loss of memory and understanding, or other cause." On March 26, 1904, Preston made and executed his last will and testament. On October 14th, following, the second commission issued, and on December 6th, 7th, and 8th,

the commissioner and jury heard the evidence and united in a finding that Preston was incompetent to manage himself or his affairs, and that such incompetency dated from before the month of November, 1903. On December 31st, the inquisition was confirmed, and a committee of the person and estate was appointed and entered upon the discharge of his duties. On March 1, 1905, Preston died. On March 3d, following, a citation issued out of the Surrogate's Court of the County of Suffolk, for the probate of said will. Certain of the heirs at law and next of kin of the decedent filed an answer in said proceeding, alleging that the paper offered for probate was not the last will and testament of the deceased, and not his free, unrestrained, or voluntary act; that at the time of its execution he was not of sound mind, memory, or understanding; that by the inquisition of December 6, 7, and 8, 1904, he had been found incompetent to manage himself or his affairs, from a date prior to the month of November, 1903; and asked for the dismissal of the proceeding.

The issues came on for trial before the surrogate on April 24, 1905. The petitioner swore the subscribing witnesses to the will, introduced it in evidence, and rested. The contestants then offered in evidence the petition, commission of October 14, 1904; the precept issued by the commissioner, notice of hearing, inquisition of December 9, 1904; order of confirmation, and bond of committee. The petitioner objected to these papers being received in evidence upon the grounds: First, that they were irrelevant, incompetent, and immaterial, and too remote, as the inquisition was made in December, some nine months after the execution of the will offered for probate; and, second, that the clause in the inquisition that dated back and overreached the date of the will was null and void and contrary to the provisions of the Code, requiring the jury to confine itself to the mental condition of the person at the time when the inquisition was taken—which objections were overruled, and the evidence received. Exceptions were duly taken. The following appears from the record immediately following this ruling: "The court here decides that the burden is upon the proponent to show competency in the testator at the date of making the will. If the inquisition is competent evidence, it overreaches the date of making the will and establishes a prima facie case of incompetency at that time, and therefore puts upon the proponent the burden of showing a sound and disposing mind and memory on that day." During the progress of the trial the contestants called as a witness Dr. Loper, who had been Preston's family physician for many years. Basing his testimony upon knowledge acquired in attending Preston in his professional capacity, and while the relation of physician and patient existed between them, he was permitted to testify, over proponent's objection and exception, to Preston's mental and physical condition during several years, and that he was incompetent in the fall of 1903, as well as on March 26, 1904, the time when the will offered for probate was made. Probate was denied. From the decree accordingly entered, this appeal is taken.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Thomas Young (Nathan D. and Nathan O. Petty, on the brief), for appellant.

Herbert L. Fordham, for respondents.

RICH, J. The ruling of the surrogate, admitting that portion of the inquisition finding Preston incompetent for more than a year prior to the time it was taken, was erroneous. Section 2335 of the Code of Civil Procedure expressly limited and confined the inquiry as to the competency of Preston to the time of the hearing, which was December 6, 7, and 8, 1904. It is immaterial that the petition upon which the proceeding was instituted omitted the word "lunacy" and alleged incompetency arising from old age, loss of memory, and under-

standing as its basis, as the word "lunacy" as used in section 2335 of the Code, under the provisions of section 7 of the statutory construction law (Laws 1892, p. 1487, c. 677), evidences all phases of alleged incompetency, including imbecility arising from old age and loss of memory or understanding. Matter of Schrodt, 32 Misc. Rep. 540, 67 N. Y. Supp. 244; Matter of Clark, 57 App. Div. 5, 67 N. Y. Supp. 631.

The evidence of Dr. Loper was also incompetent, under the provisions of section 834 of the Code of Civil Procedure. Under this section it has been held that a physician cannot testify as to the previous condition of a person, whose knowledge was acquired while attending such person (Barker v. Cunard Steamship Co., 91 Hun, 495, 36 N. Y. Supp. 256, affirmed without opinion in 157 N. Y. 693, 51 N. E. 1089); and that information of the existence of an ailment, although not the subject of the physician's attendance or treatment, acquired through examination of the patient in attending him in a professional capacity, is privileged (Nelson v. Village of Oneida, 156 N. Y. 219, 50 N. E. 802, 66 Am. St. Rep. 556); and that, upon the probate of a will, the testimony of a physician who attended upon the testator in a professional capacity is not competent upon the question of mental capacity (Matter of Coleman, 111 N. Y. 220, 19 N. E. 71).

The objections to this evidence were sufficiently definite, and there is no suggestion of any waiver under which the evidence objected to was made competent. The ruling of the learned surrogate that the burden of proof was by the inquisition shifted to proponent was also erroneous. At common law and under our statutes the presumption is that every man is compos mentis at the time of performance of the act challenged. The burden of proving that he was non compos mentis rests from beginning to end of the inquiry upon the party who alleges an unnatural condition of mind existing in the testator. "He who sets up the fact that the testator was non compos mentis must prove it." Delafield v. Parish, 25 N. Y. 9.

In his opinion the learned surrogate says:

"This inquisition was concurred in by the commissioner and was confirmed by an order of the Supreme Court dated December 31, 1904, in and by which a committee of the person and estate of the deceased was duly appointed. The finding of this jury, concurred in by the commissioner in the proceedings de lunatico inquirendo, is not only presumptive evidence of the testamentary incapacity of the decedent, but is conclusive upon the subject until overcome by satisfactory evidence. Matter of Widmayer, 74 App. Div. 336, 77 N. Y. Supp. 663, citing Matter of Coe, 47 App. Div. 177, 62 N. Y. Supp. 376; Matter of Clark, 57 App. Div. 5, 67 N. Y. Supp. 631; Underhill on Wills, § 99. And on the authority of Wadsworth v. Sharpsteen, 8 N. Y. 395, 59 Am. Dec. 499, 'the cases do not make any distinction, where the act is overreached by the inquisition, whether it was committed before or after the time the inquisition was found. There can be no difference in principle between the two cases.' This, then, is the situation. A jury having found that the decedent was incompetent to take charge of his property and manage his affairs, and it appearing that the alleged will was made intermediate such finding and the institution of the proceedings de lunatico inquirendo, a legal presumption exists which is binding upon the Surrogate, until overcome by proof, that the decedent was incompetent to make a will at the time that this will purports to have been made. Matter of Widmayer, supra. * * * I think proponents have signally failed to meet the presumption against the competency of this testator following the inquisition and its confirmation."

Wadsworth v. Sharpsteen, supra, cited as an authority, was decided 21 years before the section of the Code in question was enacted, and he quotes from the dissenting opinion. Neither in that case, or in the Matter of Widmayer or Matter of Coe, also cited, was the question involved in this proceeding considered or determined. The act of the incompetent challenged in each case was done after the inquisition, and not several months before, as in the case at bar. The cases relied on do not support the views of the learned surrogate: nor does Hughes v. Jones, 116 N. Y. 67, 22 N. E. 446, 5 L. R. A. 637, 15 Am. St. Rep. 386, cited by the respondent, in which the commission was issued October 18th, and inquisition filed November 13, 1871, more than two years before the amendatory statute first prohibiting retrospective findings was enacted, and at a time when such findings were authorized by the existing law.

The opinion next asserts:

"Nor is this all. Certain, direct, positive, and wholly reliable testimony has been offered in this proceeding as to the mental condition of this decedent that had no place before the jury in this inquiry. In the lunacy proceedings the lips of the one man whose opportunities to observe were the best, and whose deductions from observed facts were the most reliable and trustworthy, were fast sealed. Dr. Arthur C. Loper then testified upon a hypothetical state of facts only, just as some other physician did. But now the seal of professional privilege is broken, and he testifies, from knowledge gained in his capacity as a physician in constant attendance upon the decedent up to the fall of 1903, that the decedent was then incompetent and was so on March 26, 1904."

It is obvious, from his opinion, that the learned surrogate regarded himself concluded by the findings contained in the inquisition. The only evidence, outside of that afforded by the inquisition and order of confirmation, which he seems to have taken into consideration, was the incompetent evidence of Dr. Loper, which he holds fortifies and strengthens the presumption he concluded he was bound by. Eliminating the incompetent evidence, and giving careful consideration to that remaining, I am not clear but that the weight of evidence was in favor of the proponent, and that the will should have been admitted to probate.

It follows, therefore, that the decree must be reversed, both upon questions of law and fact, costs to abide the event, payable out of the estate. And the following questions of fact sent to a jury for determination: First, Was the alleged testator competent to make a last will and testament at the time the will proposed for probate is alleged to have been executed? Second, Was such will, if executed, the free and voluntary act of the decedent? Third, Was the will offered for probate signed and duly executed by decedent? All concur.