HENRY J. RALPH (Thomas F. Cooney, Ex'r) *vs.* CLARINGTON E. TAYLOR, Adm'r.

MARCH 11, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Guardian and Ward.   Contracts.*

The contracts of a person under guardianship (except for necessaries) are void and no suit can be maintained thereon, and the same rule applies to a person under guardianship by reason of habitual drunkenness, as for any other cause.

*(2)   Guardian and Ward.   Contracts.   Personal Services.*

Where by statute the contracts of a person under guardianship are declared void, a contract made by a ward for his personal services is within the prohibition of the statute.

*(3)   Guardian and Ward.   Quasi Contracts.*

While a ward is legally incapable of making a valid express contract for labor and services to be performed by him, he may yet recover in a suit brought in his name by his guardian for valuable services actually performed by him, although without the consent or knowledge of his guardian, the law implying a promise to pay on the part of the other party, reasonable compensation for such services.

In such action recovery would not be limited to the amount attempted to be fixed by the void express contract, but would be based on a *quantum meruit.*

*(4)   Guardian and Ward.   Quasi Contracts.*

Where, after the decease of his employer, a ward filed in a probate court, a claim for his services at the rate of $8 a month, and after the ward had brought suit in his own name, his guardian intervened and took up the prosecution of the suit, ratifying the acts of the ward, by this action the guardian ratified the claim presented by the ward, and is limited as to the amount of recovery for services actually rendered, on a *quantum meruit,* to the claim as filed.

*(5)   Procedure.   Clerical Error.   Amendment.*

The correction of a clerical error in a bill of particulars during a trial, is within the discretion of the court.

*(6)   Evidence.*

In an action for compensation for services, evidence of the arrest of plaintiff for drunkenness, is admissible, as bearing on the amount, quality and value of the services.

*(7)   General Exceptions.*

A general exception to a charge will not be considered.

ASSUMPSIT.   Heard on exceptions of defendant, and sustained.

PARKHURST, J.   This action was originally brought by Henry J. Ralph, by writ of summons dated May 8, 1908, and served upon the defendant on the same date.   The suit was brought without the intervention of the guardian of the plaintiff; and when it was subsequently made to appear, upon proceedings taken on behalf of the defendant, that the plaintiff had been placed under guardianship, as a person who, from excessive drinking and dissipation, being incompetent to manage his estate, was liable to become a charge upon the town, by decree of the Court of Probate of the

town of Cranston, dated May 29, 1882, and still remained under such guardianship at the time of bringing suit, such further proceedings were had, that the guardian of the plaintiff was allowed to intervene and to prosecute the same (see *Taylor* v. *Superior Court*, 30 R. I. 560, where the proceedings are set forth); and thereafter said Ralph having died, leaving a will, Thomas F. Cooney, the executor therein named entered his appearance and has since prosecuted the same.

The amended declaration upon which the case was tried before a jury in the Superior Court on February 8, 1911, in the first count thereof declared upon an express contract, alleged to have been entered into between Henry J. Ralph and Nancy R. Mathewson, the defendant's intestate, in her lifetime, whereby in consideration of the plaintiff's services to be rendered to the said Nancy R. Mathewson, she promised the plaintiff to pay him therefor at the rate of eight dollars per month and board from the commencement of the services during her life and up to her death, on the 3rd day of September, 1907. The second count of said declaration is in the form of a common count in *indebitatus assumpsit* for work and labor, etc., performed, etc., in and about the business of the said Nancy R. Mathewson at her special instance and request, and relies upon her implied promise to pay, in common form, stating no definite sum, and is to be treated as based upon a *quantum meruit.*

The case, on the part of the plaintiff, was tried before the jury solely on the express contract alleged in the first count. Evidence was introduced to prove the making of this contract, and, during the whole trial of the case, the theory, both of the plaintiff's counsel and of the court, was that recovery must be had upon this contract and not upon a *quantum meruit.* Thus it appears on pages 64 and 65 of the transcript where the court, in ruling on the admissibility of testimony, said: "What you have to prove is that he performed the work, and if it is followed up by showing that at times he didn't perform his work, why you may show that.

Mr. Sullivan: It is on the theory of the plaintiff that such a contract was made. We claim there was no contract made, therefore there is no presumption that Henry J. Ralph was in the homestead of Nancy R. Mathewson under the terms of this contract. The Court: If he recovers, it must be under the terms of that contract. He can't recover under *quantum meruit* or anything of that sort. Mr. Sullivan: I can show that he hadn't the capacity to perform the alleged contract. If I can show that on one certain day he was drunk and in such condition that he was unable to render services, I can show that. The Court: You can show that; I told you you could, that he was unable to do his work by reason of drunkenness."

Again, in charging the jury the court said, in speaking of the plaintiff's claim (pp. 113–117): "Now, the claim that he made was this: that in 1892, while he was at work for the husband of Mrs. Nancy R. Mathewson, that during that time, sometime in October, Mr. Mathewson died; that he had been living at the house and working there for a dollar a day and his board for the work that he did for Mr. Mathewson in the ice houses. After that time, he claimed, Mrs. Mathewson asked him if he would continue to remain, and on his consent to do so, she agreed to pay him by giving him his board, and the sum of eight dollars per month, in addition. That is the claim that he makes— that is the claim that he swears to. And he claims that under that contract then and there entered into he worked for Nancy R. Mathewson from the 1st of January, 1893, up to the time of her death, September, 1907, at that rate of eight dollars per month. He says that during that time she paid him the sum of $120.95, and that, therefore, she is indebted to him in the sum of $1,408.00, less $120.95.

"Now, the burden of proof, gentlemen, is upon Mr. Ralph, and upon his representatives now, to satisfy you by a fair preponderance of the testimony, first, that a contract was made. Second, the terms of the contract. Third, that he performed the services that he agreed to perform under

that contract. By a fair preponderance of the testimony, gentlemen, is meant not a greater number of witnesses, but that the testimony submitted by the person upon whom the burden is cast, that is, upon Mr. Ralph, or his representatives in this case, should have greater weight with you on those three points that it is necessary for him to establish in order to prove his case than the testimony submitted by the defendant, or the estate of Nancy R. Mathewson, on those three points.

"The testimony shows, gentlemen, that a contract was made; the testimony shows that the contract was made to perform certain services which have been described to you for the sum of eight dollars per month, and board. There is absolutely no testimony here, gentlemen, to contradict that testimony given by the plaintiff on those two points. So I direct you, gentlemen, that you find, first, that a contract was made; second, that the terms of that contract were to pay Mr. Ralph the sum of eight dollars per month, and his board, for the performance of the work which he says he agreed to do for that. Those two points need not disturb you at all. You will find first that a contract was made, and the terms of the contract, that is, the agreement was that in consideration for this performance of certain work, he was to receive his board and the sum of eight dollars per month. Now, the third thing that I told you the plaintiff had to prove is this—and that is the only one there is any dispute about at all—he must prove to you by fair preponderance of the testimony that he performed the services that he agreed to perform for what she promised to pay. Now, it has been suggested here, gentlemen, that at certain times he did not perform those services; that his habits were such that at certain times he did not perform those services. Instances have been testified to when he was in such a condition of mind that he could not, or did not do them, and several instances have been testified to when somebody else performed those services for him. Now, gentlemen, it makes no difference whether a man

gets drunk or doesn't get drunk. If he is drunk, but performs the services that he agreed to perform, he is just as much entitled to his pay as if he was sober when he performed those services. If he is drunk and can not perform the services that he has agreed to perform, then he is not entitled to pay for the services that he did not perform. And so, gentlemen, in determining this question of whether or not Mr. Ralph performed the services that he agreed to perform, for his board and eight dollars per month, you should take into consideration the testimony that has been given to you by the various witnesses here; and if you find that for a certain time he did not perform those services, then you will deduct from the amount that he claims just what you think the evidence would warrant you, if it warrants you in deducting anything, for the times that he did not perform the services that he agreed to perform. The burden of proof is upon the plaintiff, as I say, to prove that he performed those services—it is for him to show it. If he doesn't show that he performed services all the time, but he shows that he performed services part of the time, he is entitled to be paid for the services that he did perform. In determining that question, gentlemen, you will deduct from the total amount of his claim what you believe the evidence shows that he is not entitled to be paid. Because, as I say, the witnesses all agree that when he was sober and in his right mind, he performed the services that he says that he agreed to perform under this contract. Now, gentlemen, if you find for the plaintiff, you will add, in addition to the sum that you find, interest on this claim from the date of the death of Nancy R. Mathewson, September 3rd, 1907, up to the present time, at the rate of six per cent."

The defendant at the outset by his pleas raised the question whether there was or could be any valid contract between the plaintiff, being a person under guardianship, and the defendant's intestate; first by pleas to the first declaration; and second by pleas to an amended declaration, which was filed April 10, 1909 (wherein the two counts

were substantially the same as those of the final amended declaration, above set forth), pleas thereto being filed April 23, 1909, wherein the defendant specially pleaded in bar setting up that the contract set forth in the first count of the amended declaration was null and void by reason of the fact that the plaintiff was under guardianship; a similar plea was filed to the second count (being a common count in *indebitatus assumpsit* for work and labor, etc.); to these special pleas plaintiff demurred; and upon hearing, October 11, 1909, the demurrer to the pleas was sustained, the defendant not appearing; thereafter on October 13, 1909, defendant duly filed exception to this decision, as appears by the clerk's minutes, as well as by a formal exception on file. We do not find that this exception has been waived, but on the contrary it appears in the bill of exceptions, which was duly allowed and is now before us, as exception number I, set forth in the bill, on the second page thereof. The same question is again raised by the defendant's exceptions to that portion of the charge to the jury, which is above quoted; which latter exceptions appear as numbers XVI, XVII, XVIII, and XIX in the bill of exceptions.

At the time when the express contract between Henry J. Ralph and Nancy R. Mathewson was alleged to have been made, in 1892, the said Henry J. Ralph was and had been under guardianship as above shown, both as to his person and his estate, since May 29, 1882, and remained so down to the time of his death. The law of this State, which was in force at the time when his guardian was appointed is found in Pub. Stat., 1882 (in operation on and after February 1, 1882), cap. 168, § 16, as follows: "Sec. 16. After setting up of the required notice in the office of the town clerk, and after notice to the intended ward, all contracts, bargains and conveyances made by such intended ward, until the final action of the court of probate on the application, shall be null and void; and all contracts, bargains and conveyances made by any person under guardianship shall be utterly void." (See, also, same statute, Gen. Stat., 1872,

cap. 154, § 16.)  (See, also, same statute, substantially re-enacted, Gen. Laws, 1896, cap. 196, § 16.)  This remained the law of the State substantially without change down to 1905, when the Court and Practice Act, which went into effect July 17, 1905, as to its general provisions (Sec. 1260), substituted Section 1051, which reads as follows: "Sec. 1051. The petitioner may cause a copy of the petition, with the order of notice thereon, to be recorded in the records of land evidence for the town or towns in which any land of the respondent is located.  If a guardian is appointed upon the petition, all contracts relative to, and sales and conveyances of, land made by the respondent after such record, and all other contracts, except for necessaries, and all gifts, sales, or transfers of personal property, made by the respondent after the first publication of notice of the petition and before the termination of the guardianship, shall be void."

This latter provision now appears in Gen. Laws, 1909, as Section 11 of Chapter 321.

(1)    It thus appears that the statute law of this State for many years prior to the date of the contract alleged to have been made by the plaintiff with the defendant's intestate, and during all the times when said alleged contract is claimed to have been in force, and down to the present time, makes void all contracts ("except for necessaries") made by a person under guardianship.

The legal incapacity of a person under guardianship to contract has been frequently recognized in this State; as in *Jenckes* v. *Smithfield*, 2 R. I. 255, 258, where a will made by a person under guardianship was held valid and not within the prohibition of the statute, because it was not a conveyance; in *Tillinghast* v. *Holbrook*, 7 R. I. 230, 250, where a person under guardianship was held to be legally incapable to transfer a promissory note held by her to the maker thereof, and he was held liable in trover for the same, to her administrator after her death; in *Hamilton* v. *Colwell*, 10 R. I. 39, 41, where a person under guardianship was held

incapable of bringing suit in his own name, being incapable of contracting, and of rendering himself liable for costs or of appointing an attorney; this case was followed in *Taylor v. Superior Court*, 30 R. I. 200, where the general legal incapacity to make a contract is again recognized; and finally in *Taylor v. Superior Court*, 30 R. I. 560, 569, involving the rights of the same parties in this present suit, again the same general legal incapacity is recognized, while at the same time it is held that the said ward, plaintiff herein, properly filed his claim for services in the probate court, and that, said claim having been disallowed, and the ward having sued in his own name, his guardian was properly allowed to intervene and ratify and validate the suit, and to maintain the same. In this latter case, the question here under discussion, whether the ward was capable of making a valid contract, was not presented. The claim as filed in the probate court, and as now in evidence in this case, was as follows:

"To fourteen years and eight months labor at $8
per month . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,408.
"By credit, payment on account . . . . . . . . . . . . . .      120.95

"Balance due . . . . . . . . . . . . . . . . . . . . . . . . . . .  $1,287.05"

There is no suggestion in this statement of claim whether it is based upon an express contract or not, and nothing which is inconsistent with the maintenance of the suit upon the second count of the declaration, being, as above shown, a common count in *indebitatus assumpsit*, for a *quantum meruit*. It is merely the statement of a claim, which does not conclude the nature of the evidence upon which it may be maintained. So that the determination arrived at in the case of *Taylor v. Superior Court*, 30 R. I. 560, 569, in no way affects the question here presented. The general incapacity of persons under guardianship to make valid contracts as to real or personal property has been repeatedly held in other jurisdictions: *Devin v. Scott*, 34 Ind. 67; *Redden v.*

*Baker*, 86 Ind. 191; *L'Amoureux* v. *Crosby*, 2 Paige Chan. N. Y. 422; *Hoit* v. *Underhill*, 10 N. H. 220; *Carter* v. *Beckwith*, 128 N. Y. 312; *Hughes* v. *Jones*, 116 N. Y. 67; *Leonard* v. *Leonard*, 14 Pick. 280; *Wadsworth* v.,*Sharpsteen*, 8 N. Y. 388; *Wait* v. *Maxwell*, 5 Pick. 217; *Clark* v. *Caldwell*, 6, *Watts*, 139; *Imhoff* v. *Witmer's Admr.*, 31 Pa. St. 243; *Rannells* v. *Gerner*, 80 Mo. 474; see, also, Clark on Contracts, p. 187;Lawson on Contracts, p. 200, par. 163; I Parsons on Cont. (9th ed), *386, *388; Page on Cont., p. 1424, par. 909; Benjamin on Cont., p. 165; Woerner, Am. Laws of Gdnp., p. 467, par. 141.   And the same rule applies to a person under guardianship by reason of habitual drunkenness, as for any other cause.   See *Rannells* v. *Gerner*, *Wadsworth* v. *Sharpsteen*, and other cases, *supra.*

(2)    It is to be noted that none of the cases above cited, either in this state or in other jurisdictions, relates to a contract, alleged to have been made by a ward for personal services to be rendered by him; and no such case has come to our attention.   But we are unable to see that a contract for labor and services differs in principle from a contract for the conveyance or disposal of real or personal property, so that, by any sort of construction we can say that such a contract as is alleged in this case, is not included within the plain prohibition of the statute.   As the statute is intended for the protection of the ward from his own improvidence as well for his own benefit as for the purpose of preventing him from becoming a public charge, it is as important that he be protected from improvidence in contracting for the sale of his services as in the sale of his property.   If it were otherwise a ward might sell very valuable services for a most inadequate price and yet if he were allowed to enforce an express contract, he must be bound by its terms, and would perhaps thereby become entitled to recover much less than his services as rendered would be fairly worth.   We are of the opinion, therefore, that the contract alleged in this case to have been made between Henry J. Ralph and Nancy R. Mathewson, was void under the statute above set forth and

that no suit could be maintained thereon; and therefore that the Superior Court erred in sustaining the plaintiff's demurrer to the defendant's second plea to the first count of the first amended declaration, as above set forth; and that portion of the defendant's exception number I, on the second page of his bill of exceptions, which relates to the sustaining of the demurrer to said second plea to the first count, is therefore sustained; and the defendant's exceptions numbers XVI, XVII, XVIII, XIX, to the charge of the court to the jury, above quoted, are also sustained on the grounds above set forth, that, inasmuch as the plaintiff could not in law make a contract, the instruction to the jury that such contract was made and proved was error.

(3)    But it does not follow that, because a ward is legally incapable of making a valid and binding express contract for labor and services to be performed by him, he is therefore debarred from recovery in a suit brought in his name by his guardian, for valuable services actually performed by him for a person who sees fit to avail himself of those services. Such a contention would be so manifestly unjust that it needs no argument to refute it.   Where it is made to appear that such a ward, although without the consent or even without the knowledge of his guardian has in fact rendered valuable services to a person at such person's request, the law will imply a promise to pay for them on the part of the person to whom the services have been rendered, such sum of money as will be reasonable compensation for such services; so that in the ordinary case, where the employer is living when suit is brought, if the guardian saw fit to sue in his ward's name for such services as had been rendered, he would not be limited in his recovery to the amount, if any, attempted to be fixed by express contract between the ward and his employer, said express contract being void in law; but would be allowed to recover on a *quantum meruit,* on the promise to pay implied in law, such as would naturally be

(4) set up in a count in *indebitatus assumpsit.*   The case at bar differs from the ordinary case above set forth in this, that,

the employer being dead, the ward in this case filed in the probate court a claim for his services for a term of years and months at the rate of $8 per month; the ward subsequently brought suit on said claim in his own name; his guardian subsequently, at his own request, was allowed to intervene in said suit "and take upon himself the prosecution thereof, said guardian hereby ratifying and approving the acts of said ward in the premises stated in said suit," as appears in his petition. It is therefore plain that in this case the guardian ratified the claim presented by his ward, and, as to the amount of his recovery under said claim, as against the estate of Nancy R. Mathewson, must be limited to the sum of $8 per month, and can recover only for such services as he can show to have been actually rendered such sum up to but not above that amount, as shall be compensation for services actually rendered. The suit now stands, as if the guardian had originally filed the claim, and he is to be limited as to the amount of recovery to the claim as filed, under the principle of the case of *Anderson* v. *Williams, Exr.*, 26 R. I. 64.

We are of the opinion, therefore, that the plaintiff's attorney and the Superior Court both erred in the theory upon which the case was tried; that instead of being tried solely upon the express contract, which we have shown to be void, the case should have been tried upon the second count of the declaration in *indebitatus assumpsit;* and that the plaintiff should have been called upon to prove the fact and extent of services actually rendered to Nancy R. Mathewson in her lifetime, and the value thereof; and that the defendant should have presented such proper testimony as he might see fit to introduce upon the same matters. The second count of the declaration has never been withdrawn and still stands as a part thereof. The demurrer to the special plea of the guardianship to the second count of the first amended declaration was properly sustained, inasmuch as said second count, in our opinion as above set forth, sets forth a proper cause of action. The defendant's exception I, on page 2,

of the bill of exceptions, so far as it relates to the sustaining of the demurrer to the plea last above referred to is therefore overruled.

The defendant's exception to the refusal of the court below to grant a new trial must be overruled also, because it appears upon an inspection of the whole record that the errors upon which a new trial should be granted, are all errors of law occurring at the trial on the part of the court below, for which the judge of the Superior Court had no jurisdiction to grant a new trial. (C. P. A., Sec. 485; Gen. Laws, R. I. 1909, cap. 298, § 12).

(5)    Defendant's exception II, relates to a ruling at the trial permitting the bill of particulars on file to be amended by changing the name of the claimant therein from Edgar J. Ralph to Henry J. Ralph. The paper was on file as a bill of particulars and the amendment allowed was merely to correct a clerical error and was clearly within the discretion of the court. The exception is frivolous, and is overruled.

Exception III relates to the exclusion of a question asked by defendant's attorney in cross-examination of one of plaintiff's witnesses (Tr. p. 22): "Do you ever remember seeing Mr. Ralph in a condition of drunkenness or under the influence of liquor?" The question was too broad and general and was properly excluded. This exception is overruled.

Exception IV relates to the exclusion of a question asked of Henry J. Ralph, in cross-examination by defendant's attorney (Tr. p. 35): "C. Q. 19. What were your wages with Stephen Mathewson from the time you were employed by him up to the time that you were put under guardianship?" This question related to a period of years prior to May 29, 1882, and the evidence sought to be elicited was too remote to have any bearing on the issues before the court. The question was properly excluded and the exception is overruled.

Exception V relates to the exclusion of a question asked Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 35): "C. Q. 81. You were arrested by the

(6) police a number of times during that fourteen years and eight months as being intoxicated, were you not?" The question related to the period for which Ralph was claiming compensation for services and was pertinent as to the amount, quality and value of services rendered, and should have been admitted. The exception is sustained.

Exception VI relates to the exclusion of a question asked of Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 35): "C. Q. 86. Now, what did Mrs. Mathewson say to you when you say she was giving you advice?" This question was not pressed, but after objection by counsel for plaintiff was reframed (see next exception); this exception is therefore overruled.

Exception VII relates to the exclusion of a question asked of Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 36): "C. Q. 87. Now, what did Mrs. Mathewson say to you when you say she was giving you advice with reference to your actions in drinking to excess and making a nuisance of yourself about the place?" The question was properly excluded, as stating matters as to which there was nothing in evidence, and the exception is overruled.

Exception VIII relates to the exclusion of a question asked of Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 36): "C. Q. 90. How many times did she talk to you in that way?" Plaintiff had admitted in answer to previous questions that Mrs. Mathewson had advised him against drinking too much. It was proper to question the plaintiff on this subject, by questions properly framed, with a view to get from him the truth as to whether Mrs. Mathewson's objections to his drinking were so frequent as to throw light upon and extent of his services. This exception is sustained.

Exception IX relates to the exclusion of a question asked of Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 36): "C. Q. 105. How much money came into the possession of your guardian? A. You mean all?

C. Q. 106. Yes, all he had?" The question was entirely immaterial to any issue in the case, and was properly excluded. This exception is overruled.

Exception X relates to the exclusion of a question asked of Henry J. Ralph in cross-examination by defendant's attorney (Tr. p. 37): "C. Q. You never told your guardian, Mr. Sherman, that he didn't need to pay your board because you were going to work for it?" This question was immaterial and was properly excluded, and this exception is overruled:

Exception XI relates to a ruling excluding any testimony bearing upon any agreement or contract between the plaintiff and Mr. Stephen Mathewson or any agreement or contract with any party prior to the time of the contract with Mrs. Nancy R. Mathewson (Tr. p. 37). As we have above shown, Mr. Ralph, being under guardianship, and incapable of making a contract, evidence of his previous attempted contracts would have been inadmissible on that ground; furthermore it does not appear that such excluded evidence, if not inadmissible for this reason, would have had any material bearing upon the issues of fact in the case at bar. This exception is overruled.

Exceptions XII and XIII (Tr. p. 38) appear to relate to the same matter of the exclusion of prior contracts, and are without merit for the reasons last above stated, and are overruled.

Exception XIV relates to a ruling upon a question asked of the defendant Taylor, by his attorney in direct examination (Tr. p. 43): "21 Q. What was said at that time?" The question related to a conversation defendant said he had with Ralph the day after Mrs. Mathewson died, September 4th, and was objected to by plaintiff's attorney, on the ground that no foundation had been laid by the defendant's attorney in the prior examination of Mr. Ralph, on deposition, Mr. Ralph having died prior to the trial; the court at first took this view, and defendant's attorney excepted, but after further argument the court finally ruled

(Tr. p. 44): "Mere conversation is immaterial. If it relates to this case, you may ask him. If his deposition had never been taken it would be admissible." Defendant's attorney then did not reframe the question, and took no exception to the last ruling quoted above, but proceeded to other matters. This exception is therefore overruled.

Exception XV relates to the exclusion of a question and answer thereto asked of defendant Taylor by his attorney (Tr. p. 46): "34 Q. What was Mrs. Mathewson's income, if you know, as her agent, from her property in a year? A. I couldn't tell you." Plaintiff's counsel objected on the ground of immateriality and the objection was sustained. The ruling of the court was proper and the exception is overruled.

Exceptions XVI, XVII, XVIII, and XIX have already been sustained, relating to the court's charge to the jury as above quoted.

Exception XX (Tr. p. 118) is as follows: "I also take exception to that part of Your Honor's charge in every particular which instructs the jury on any principle of law involved in this case, on the ground that such an instruction is an error in law." This exception is of the same kind which was characterized in *Newton* v. *Weaver,* 13 R. I. 616, 619, as a "drag-net," and is overruled, for the reasons stated in that case.

All of the defendant's exceptions are overruled except those numbered I, V, VIII, XVI, XVII, XVIII, and XIX as hereinbefore indicated; and the case is remitted to the Superior Court for the Counties of Providence and Bristol for a new trial.

*Cooney & Cahill,* for plaintiff.
*Edward M. Sullivan, Francis E. Sullivan,* for defendant.